IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUDY KEMP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10 C 3347 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| CHICAGO HOUSING AUTHORITY, ) | |
| a municipal corporation, and ) | |
| HISPANIC HOUSING ) | |
| DEVELOPMENT CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Judy Kemp has filed a five-count amended complaint against the Chicago Housing Authority ("CHA") and the Hispanic Housing Development Corporation ("HHDC") (collectively, "defendants"), primarily seeking declaratory and injunctive relief regarding the proposed termination of her public housing assistance.[1] Before the court are defendants' motions to dismiss. For the following reasons, the motions [#11, 12] are granted.

### BACKGROUND

**I.     Relevant Allegations**

Kemp has been a CHA resident since 1996 and lived with her two sons, Jerome and Jaheim Anderson, at 2741 W. Crystal St., Apt. A until January 4, 2010. Her unit is owned by CHA, a municipal corporation that administers the public housing program in Chicago, and

---

[1] Kemp also seeks damages for personal property she claims has been converted or disposed of illegally by defendants.

1

managed by HHDC, a corporation contracted by CHA to lease and manage Kemp's unit. In September and October 2009, three acts of criminal damage to Kemp's unit occurred, allegedly undertaken by members of a local gang led by Roman Mason, who had a dispute with Jerome. Mason was convicted and imprisoned for his participation in this damage. On October 11, 2009, Mason also allegedly vandalized and set on fire Kemp's car. Kemp asked HHDC for a transfer to a different neighborhood based on these acts but was told that there were no units available. Kemp contacted CHA's Victim Assistance Program but was told that she did not qualify for a transfer because the incidents were not considered a "threat."

On January 4, 2010, Kemp's unit was substantially destroyed by a fire. Kemp suspects that Mason and other gang members were involved. That day, HHDC offered Kemp an emergency transfer to an apartment in Little Village, but Kemp rejected the unit as she considered it to be in a high crime area with substantial gang activity. On January 14, 2010, defendants offered Kemp a unit in Wentworth Gardens, but Kemp again rejected this site as she was concerned about crime and gang activities, had a relative who was murdered in that area, and had an intimidating and hostile encounter with men loitering around the unit when she went to visit. On March 2, 2010, Kemp was shown a third unit at 1325 W. Huron but voiced concern over its proximity to Mason's home. Defendants informed Kemp she had until Friday, March 5, 2010 to accept the unit. Although Kemp alleges she decided to accept the unit, she did not call to do so until Monday, March 8 and did not get through to the appropriate person, Mike Sanchez, at that time, although she informed an HHDC receptionist that she wanted to speak to Sanchez to accept the unit on March 9.

On March 12, 2010, Kemp was served with a notice of termination. The notice provided

that her lease would be terminated in 30 days because (1) she owed $1090 in rent even though her unit had been damaged by fire because she had refused alternate accommodations and (2) she had violated various provisions of her lease, including Section 13(e), and the CHA's Admissions and Continued Occupancy Policy because her "unit was damaged by fire due to [her] neglect, negligence and or carelessness." Ex. F to Am. Compl. ¶ 5(g). The notice of termination further provided, "On information and belief, the fire started in two different sections of [Kemp's] unit, with an open flame and/or smoke materials and there was not any sign of forced entry. [She was] offered alternative housing and/or a transfer to another unit and refused the alternative housing and/or transfer." *Id.* When Kemp reached Sanchez on March 16, 2010, she was informed that she received the notice of termination because she did not accept the third unit and that the third unit had been rented.

Defendants accuse Kemp's son, Jerome, of starting the fire, although he has not been arrested or charged in connection with the fire. Kemp denies this accusation, and Jerome claims not to have been home when the fire started. Kemp also claims that she is entitled to abatement of rent because the fire rendered the unit uninhabitable and she had good cause to reject the first two units and never refused the third.

On March 17, 2010, Kemp requested an informal grievance with HHDC to contest the notice of termination. She attended an informal grievance hearing on April 20, 2010 but has not been provided with a written decision. On May 18, 2010, HHDC filed a forcible entry and detainer action in the Circuit Court of Cook County.

## II.      Relevant Statutory and Regulatory Requirements and the CHA Lease

The United States Housing Act of 1937 was implemented to, among other things, "promote the goal of providing decent and affordable housing for all citizens through the efforts and encouragement of Federal, State, and local governments, and by the independent and collective actions of private citizens, organizations, and the private sector." 42 U.S.C. § 1437(a)(4). The Secretary of Housing and Urban Development is directed to "establish housing quality standards . . . that ensure that public housing dwelling units are safe and habitable." *Id.* § 1437d(f)(2). Public housing agencies, such as CHA, must use leases which "require that the public housing agency may not terminate the tenancy except for serious or repeated violation of the terms or conditions of the lease or for other good cause." *Id.* § 1437d(l)(5). Regulations further elaborate upon proper grounds for termination of tenancy. *See* 24 C.F.R. § 966.4(l)(2). If a unit is damaged making it uninhabitable, the lease is to provide that rent will be abated if the public housing agency does not make repairs within a reasonable time or offer standard alternative accommodations in the interim, "except that no abatement of rent shall occur if the tenant rejects the alternative accommodation or if the damage was caused by the tenant, tenant's household or guests." 24 C.F.R. § 966.4(h)(4).

CHA's lease recites that it is between CHA and/or its property manager and the tenant. Ex. A to Am. Compl. Section 13(e) provides:

> If the resident's dwelling unit is uninhabitable or is hazardous to life, health, and safety, and if a decent and sanitary alternative accommodation that does not contain hazardous defects is offered and refused and the resident refuses to leave the unit until it is repaired, the resident's Lease may be terminated.

*Id.*

**III.    Procedural History**

On June 2, 2010, Kemp filed her initial complaint and request for preliminary injunction with this court.  Pursuant to an agreed order, Kemp was provided with keys to her repaired unit and HHDC agreed not to move forward with the state court eviction action against Kemp until this court determines whether it has subject matter jurisdiction over Kemp's complaint.

Kemp filed an amended five-count complaint on July 1, 2010.  Count I requests an order declaring that defendants' policy and practice of terminating public housing assistance, particularly Section 13 of the CHA lease, violates 42 U.S.C. § 1437d(l)(5) and 24 C.F.R. § 966.4(l)(2) and thus is preempted by federal law and unenforceable, and the entry of an injunction ordering defendants to withdraw the notice of termination.  Count II seeks specific enforcement of the terms of Kemp's lease.  Count III alleges a violation of the City of Chicago's Residential Landlord and Tenant Ordinance § 5-12-160 for failing to timely repair Kemp's unit and provide her with standard alternative accommodations.  Count IV alleges the conversion of Kemp's personal property in the amount of $1200.  Count V seeks specific enforcement of the emergency transfer provisions of Kemp's lease.

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The burden of proof is on the party asserting jurisdiction.  *United Phosphorus, Ltd.* v. *Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). In determining whether subject matter jurisdiction exists, the court must accept all well-pleaded facts alleged in the complaint and draw all reasonable inferences from those facts in the plaintiff's favor.  *Sapperstein* v. *Hager*, 188 F.3d 852, 855 (7th Cir. 1999).  "Where evidence

pertinent to subject matter jurisdiction has been submitted, however, 'the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.' " *Id.* (quoting *United Transp. Union* v. *Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)).

## DISCUSSION

I. **Subject Matter Jurisdiction**

Federal courts have jurisdiction over "all civil actions arising under the Constitution, law, or treaties of the United States." 28 U.S.C. § 1331. Kemp premises jurisdiction on the Supremacy Clause and the United States Housing Act of 1937, 42 U.S.C. §§ 1437, 1437d. Defendants argue that a claim of preemption under the Supremacy Clause does not "arise under" the Constitution and that no other right of action exists to vest this court with subject matter jurisdiction. *See New West, L.P.* v. *City of Joliet*, 491 F.3d 717, 719 (7th Cir. 2007) ("[The Supremacy Clause] does not create any substantive rights; instead it provides that national law prevails over state and local law in the event of conflict."). Resolution of this question depends on two lines of Supreme Court cases, which "do not lie easily side by side. Where they come together, as they do in this case, they tend to snarl, and the doctrinal knot is not neatly undone." *Philip Morris Inc.* v. *Harshbarger*, 946 F. Supp. 1067, 1070 (D. Mass. 1996).

The Supreme Court and Seventh Circuit, along with courts across the country, have allowed preemption claims to proceed in federal court under the Supremacy Clause in equitable proceedings pursuant to *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). In *Shaw* v. *Delta Airlines, Inc.*, the Supreme Court stated that "[i]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. A

6

plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." 463 U.S. 85, 96 n.14, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983) (citations omitted). This was recently reaffirmed in *Verizon Maryland Inc.* v. *Public Service Commission of Maryland*, where the Court stated, "We have no doubt that federal courts have jurisdiction under § 1331 to entertain such a suit. Verizon seeks relief from the Commission's order 'on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail,' and its claim 'thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.'" 535 U.S. 635, 642, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (quoting *Shaw*, 463 U.S. at 96 n.14); *see also Lawrence County* v. *Lead-Deadwood School Dist. No. 40-1*, 469 U.S. 256, 259 n.6, 105 S. Ct. 695, 83 L. Ed. 2d 635 (1985). In *Illinois* v. *General Electric Co.*, the Seventh Circuit held that "[t]he commerce and supremacy clauses of the Constitution create rights enforceable in equity proceedings in federal court." 683 F.2d 206, 211 (7th Cir. 1982); *see also Ill. Ass'n of Mortgage Brokers* v. *Office of Banks & Real Estate*, 308 F.3d 762, 765 (7th Cir. 2002) ("[28 U.S.C. § 1331 supplies jurisdiction when the plaintiff seeks declaratory relief against regulation by a state agency and contends that the agency has violated federal law by adopting particular regulations."). Other circuits have agreed. *See, e.g.*, *Local Union No. 12004, United Steelworkers of Am.* v. *Massachusetts*, 377 F.3d 64, 74–75 (1st Cir. 2004); *St. Thomas-St. John Hotel & Tourism Ass'n* v. *Gov't of the U.S.V.I.*, 218 F.3d 232, 241–42 (3d Cir. 2000); *Planned Parenthood of Houston & Se. Tex.* v. *Sanchez*, 403 F.3d 324, 331 (5th Cir. 2005); *Qwest Corp.* v.

*City of Santa Fe*, 380 F.3d 1258, 1264 & n.1 (10th Cir. 2004).

Defendants argue, however, that Kemp's preemption claim is only a federal defense to the pending state court eviction action and thus cannot create federal jurisdiction, relying on cases that have found that conflict preemption does not provide a basis for jurisdiction in the removal context. *See Vorhees* v. *Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) ("[O]rdinary or conflict preemption is merely a defense to the merits of a claim. As such, according to the well-pleaded complaint rule, it does not provide a basis for federal question jurisdiction."). Although not cited by the defendants, their argument is supported by oft-quoted dictum from the Supreme Court's opinion in *Public Service Commission of Utah* v. *Wycoff Co.*: "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." 344 U.S. 237, 248, 73 S. Ct. 236, 97 L. Ed. 291 (1952). Here, the eviction action is not federal in character, which under *Wycoff* would prevent Kemp from bringing this action in federal court. In interpreting *Wycoff*, however, the Seventh Circuit has stated,

> [I]f understood to require federal claimants always to litigate their claims as defenses in state court if they can, [*Wycoff*] must be wrong, and though lower federal courts have followed it from time to time the Supreme Court has not. Since the impending state action will almost always be based on state law alone, the dictum, read broadly, would overrule *Ex parte Young* and every case that has ever followed it. If not wrong, such a reading would still be an inappropriate flight of fancy for an inferior federal court to take.

*Gen. Elec. Co.*, 683 F.2d at 211. This makes it clear that while Kemp could raise her preemption claim as a defense in the eviction proceeding, her "properly framed federal cause of action does not fall outside § 1331 simply because it could also arise as an affirmative federal defense in state

8

court." *Aroostook Band of Micmacs* v. *Ryan*, 404 F.3d 48, 61 (1st Cir. 2005), *overruled on other grounds by Narragansett Indian Tribe* v. *Rhode Island*, 449 F.3d 16 (1st Cir. 2006)); *see also Dash, Straus & Goodhue, Inc.* v. *City of Chi.*, No. 90 C 2305, 1990 WL 114170, at *2–3 (N.D. Ill. July 26, 1990); *cf. John E. Reid & Assocs.* v. *Ill. Human Rights Comm'n*, 740 F. Supp. 1314, 1317–18 (N.D. Ill. 1990). The situation would be different if Kemp were suing a private party, for an *Ex parte Young* action would not be available. *See Ne. Ill. Reg'l Commuter R.R. Corp.* v. *Hoey Farina & Downes*, 212 F.3d 1010, 1014–16 (7th Cir. 2000); *Aroostook Band*, 404 F.3d at 58. Because an *Ex parte Young* action is available here, however, the court finds that it has jurisdiction over Kemp's preemption claim under § 1331.

**II.** *Younger* **Abstention**

Defendants argue alternatively that this court should abstain from exercising jurisdiction pursuant to *Younger* v. *Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). *Younger* abstention is based on principles of equity and comity and is "designed to permit state courts to try state cases free from interference by the federal courts." *FreeEats.com, Inc.* v. *Indiana*, 502 F.3d 590, 595 (7th Cir. 2007) (citations omitted) (internal quotation marks omitted). *Younger* abstention is appropriate where there is an ongoing state court proceeding that (1) is judicial in nature, (2) involves important state interests, and (3) provides an adequate opportunity to raise federal claims, (4) as long as no extraordinary circumstances exist that make abstention inappropriate. *Stroman Realty, Inc.* v. *Martinez*, 505 F.3d 658, 662 (7th Cir. 2007). The parties do not dispute that the state eviction proceeding is judicial in nature.

Under the second prong, *Younger* abstention is appropriate where "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the

9

comity between the States and the National Government." *Pennzoil Co.* v. *Texaco, Inc.*, 481 U.S. 1, 11, 107 S. Ct. 1519, 95 L. Ed. 2d 1(1987). In considering whether an important state interest exists, the court is not to look "narrowly to [the State's] interest in the outcome of the particular case" but rather to "the importance of the generic proceedings to the State." *New Orleans Pub. Service, Inc.* v. *Council of the City of New Orleans*, 491 U.S. 350, 365, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989). The existence of a unique regulatory or licensing system, or a distinct feature of local government not under the federal courts' general supervision, generally implicates a sufficient state interest to warrant *Younger* abstention. *See, e.g.*, *id.* at 365 (regulation of utilities is one of the most important functions traditionally associated with states); *Majors* v. *Engelbrecht*, 149 F.3d 709, 713 (7th Cir. 1998) (licensing of health care professionals); *Ahrensfeld* v. *Stephens*, 528 F.2d 193, 198 & n.7 (7th Cir. 1975) (zoning ordinances and regulations); *Kendall-Jackson Winery, Ltd.* v. *Branson*, 82 F. Supp. 2d 844, 856 (regulation of liquor distribution).

Courts are divided as to whether a state has a significant interest in an eviction action. *Compare Brooklyn Inst. of Arts & Scis.* v. *City of N.Y.*, 64 F. Supp. 2d 184, 194 (E.D.N.Y. 1999) (ejectment action from city-owned property is a standard landlord-tenant action "routinely available in disputes between private parties"); *McNeill* v. *N.Y. City Hous. Auth.*, 719 F. Supp. 233, 255 n.27 (S.D.N.Y. 1989) ("The housing court proceedings against plaintiffs are purely civil matters involving private litigants. Thus, in this case the State has only limited interest in the pending state proceedings–the interest in protecting their 'fair adjudication.'"), *with Logan* v. *U.S. Bank Nat'l Ass'n*, No. CV 09-08950 MMM (PLAx), 2010 WL 1444878, at *3 (C.D. Cal. Apr. 12, 2010) ("[D]istrict courts have routinely found that unlawful detainer actions represent a

sufficient state interest to warrant *Younger* abstention.") (collecting cases from California federal district courts); *Gallant* v. *Deutsche Bank Nat'l Trust Co.*, No. 3:10CV00006, 2010 WL 537874, at *2 (W.D. Va. Feb. 11, 2010) (same); *Doyle* v. *Schumann*, No. 1:07 CV 3684, 2008 WL 397588, at *4 (N.D. Ohio Feb. 11, 2008) (same); *Newell* v. *Rolling Hills Apartments*, 134 F. Supp. 2d 1026, 1036 (N.D. Iowa 2001) (disagreeing with *Brooklyn Institute* and finding an important state interest in eviction actions as "eviction is a relatively complex procedure extensively regulated by state law"). Cases finding that a significant state interest exists warranting *Younger* abstention, however, have not involved the additional federal interest in public housing, as Kemp's case does. In a case brought by public housing residents alleging that the local public housing authority violated their procedural due process rights by not providing them with a notice of default as required by federal law and by proceeding with state court eviction actions against them, the Third Circuit concluded that *Younger* abstention did not apply. *Ayers* v. *Phila. Hous. Auth.*, 908 F.2d 1184, 1195 n.21 (3rd Cir. 1990). The court ruled that second prong of the *Younger* test was not met:

> whatever the state's interest may be in regulating proceedings which result in removal of citizens from their homes, it cannot supersede the relevant federal interests in governing the expenditure of federal funds for [public] housing programs. . . . [T]he state interests identified here are not so important as would jeopardize the comity between [the state] and the National Government if federal power was exercised.

*Id.* This court agrees with *Ayers* that the state's interest in eviction proceedings does not sufficiently supersede the federal interest in public housing assistance to warrant *Younger* abstention.[2]

---

[2] Having concluded that the second prong of the *Younger* abstention test is not met, the court need not consider whether the state eviction proceeding would allow Kemp an adequate opportunity to

## III. Anti-Injunction Act

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Kemp seeks an injunction ordering defendants to withdraw the notice of termination.[3] Like the *Younger* abstention doctrine, the Anti-Injunction Act's "basic purpose is to prevent 'needless friction between state and federal courts.'" *Mitchum* v. *Foster*, 407 U.S. 225, 233, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co.* v. *Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970).

The Anti-Injunction Act, by its terms, only applies to "proceedings in a State court," and not administrative actions. *See Kerr-McGee Chem. Corp.* v. *City of W. Chicago*, 914 F.2d 820, 824 (7th Cir. 1990). Kemp does not seek an order staying the eviction proceeding but instead an order requiring defendants to withdraw the notice of termination. While this is not a direct request to stay a pending state court proceeding, such an injunction would have the effect of staying the pending state eviction action, as a notice of termination is a prerequisite to the institution and maintenance of such a proceeding. *See* Ill. Forcible Entry & Detainer Act, 735 Ill. Comp. Stat. 5/9-101 *et seq.* As this is tantamount to staying the eviction proceeding, it is

---

raise her federal defenses against both HHDC *and* CHA.

[3] Initially, Kemp sought an injunction ordering defendants to withdraw the notice of termination and not to file a state action for forcible entry and detainer against her. An action for forcible entry and detainer, however, was pending at the time she filed her federal complaint.

prohibited by the Anti-Injunction Act.[4]

Kemp argues that, even if the Anti-Injunction Act applies, the court may act because an injunction is necessary in aid of this court's jurisdiction. This exception to the Anti-Injunction Act applies where "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R.R. Co.*, 398 U.S. at 295. The Seventh Circuit has concluded that the exception applies where a "concurrent state proceeding . . . might render the exercise of the federal court's jurisdiction nugatory." *Winkler* v. *Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) (citation omitted) (internal quotation marks omitted). "[T]he possibility that a parallel state proceeding might 'interfere with a protected federal right' or erroneously apply federal law does not make an injunction 'necessary' to aid the court's jurisdiction," however. *Zurich Am. Ins. Co.* v. *Superior Court for the State of Cal.*, 326 F.3d 816, 825 (7th Cir. 2003). Kemp argues that the state eviction action cannot adequately protect her federal rights because it is a summary proceeding related to possession only, and she is more broadly challenging the termination of her right to public housing assistance. Illinois court decisions reveal, however, that the claims she seeks to make in federal court can be fully raised

---

[4] The court's conclusion would be different if there was only a prospective, not a pending, state court eviction proceeding. *Union Pacific Railroad Co.* v. *Chicago Transit Authority*, cited by Kemp, is distinguishable for this reason, as the case involved solely an administrative proceeding, and there was no state court proceeding pending at the time. No. 07 C 229, 2007 WL 1202417, at *4 (N.D. Ill. Apr. 20, 2007). While the administrative proceeding was a precursor to a state court eminent domain action, just as a notice of termination is a precursor to a state court eviction proceeding, here the eviction proceeding has already been instituted and so the Anti-Injunction Act comes into play, even though the request for an injunction is directed at defendants and not directly at the state court. *See Atl. Coast Line R.R. Co.*, 398 U.S. at 287 ("[T]he prohibition of § 2283 cannot be evaded by addressing the order to the parties . . . .").

as defenses in a summary eviction proceeding. *See Chambers* v. *Habitat Co.*, 68 Fed. App'x 711, 714 (7th Cir. 2003) (collecting Illinois cases); *Housing Auth. of City of Danville* v. *Love*, 874 N.E.2d 893, 375 Ill. App. 3d 508, 314 Ill. Dec. 528 (2007); *Housing Auth. of Elgin* v. *Ellis*, 589 N.E.2d 166, 226 Ill. App. 3d 124, 168 Ill. Dec. 52 (1992). There is thus no basis for applying the "in aid of federal jurisdiction" exception to the Anti-Injunction Act. Because the court cannot provide the relief requested by Kemp for her federal preemption claim, it must be dismissed.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motions [#11, 12] are granted as to Kemp's federal claim, which is dismissed with prejudice. The court declines to exercise its supplemental jurisdiction over Kemp's state law claims, which are dismissed without prejudice. This case is terminated.

Dated: July 21, 2010　　　　　　　　　　Enter: _____

　　　　　　　　　　　　　　　　　　　　　　　JOAN HUMPHREY LEFKOW
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge